IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

EMMANUEL T. JOHNSON,

                                        Plaintiff,

              v.                                Civil Action No.
                                                04-CV-0632 (GLS/DEP)

JEFF TEDFORD, Deputy Superintendent;
SGT. SNOW; W.B. CONNERS, Corrections
Officer; DAVID P. HARDIN, Corrections
Officer; MICHAEL A. GIAMBRUNO,
Corrections Officer; LYNNE KHAN,
Registered Nurse; SHERYL MILLER, Nurse
Practitioner,

                                        Defendants.

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

EMMANUEL T. JOHNSON, *pro se*

FOR DEFENDANTS:

HON. ELIOT SPITZER                      DAVID L. FRUCHTER, ESQ.
Office of the Attorney General          Assistant Attorney General
State of New York
The Capitol
Litigation Bureau
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff Emmanuel T. Johnson, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983, asserting violations of rights conferred under the First, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.  In his complaint plaintiff alleges that on November 21, 2002, he was verbally abused and physically assaulted by corrections officers at the prison facility in which he was housed at the time, and was subsequently denied adequate medical treatment for the injuries sustained as a result of that alleged attack.  Plaintiff seeks recovery of monetary damages against the named defendants.

Currently pending before the court is a motion by the defendants for summary judgment seeking dismissal of certain, though not all, of plaintiff's claims.  In their motion, defendants argue that plaintiff's claims against defendants Tedford, Giambruno, and Snow are deficient, based upon the lack of any proof of their personal involvement in the alleged violation of his constitutional rights.  Defendants also contend that plaintiff's medical indifference claims against defendants Khan and Miller are subject to dismissal, based upon his failure to exhaust his

2

administrative remedies regarding that claim before filing suit.

For the reasons outlined below, I agree that the record is devoid of evidence from which a reasonable factfinder could conclude that defendant Tedford was personally involved in the alleged use of excessive force upon the plaintiff, and thus recommend dismissal of plaintiff's claims as against that defendant.  I further find, however, the existence of genuinely disputed issues of material fact as to whether defendants Snow and Giambruno were sufficiently involved in the relevant events to give rise to liability on their parts, and additionally whether plaintiff attempted to grieve the defendants' deliberate indifference to his medical needs but was precluded from pursuing that grievance as a result of the actions of prison officials, and therefore recommend denial of the remaining portions of defendants' motion.

I.    BACKGROUND[1]

_____Plaintiff is a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  At the times

---

[1]_____For purposes of this summary judgment motion, I relate the following facts in a light most favorable to the plaintiff, who is the non-moving party. *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998).  In this regard, while defendants undoubtedly deny plaintiff's allegations regarding the relevant events, in light of the nature of the instant motion they have not in their moving papers controverted plaintiff's assertions concerning the assault and treatment which followed.

relevant to his claims plaintiff was confined within the Clinton Correctional Facility ("Clinton"), although it appears that shortly after the events which precipitated the filing of this action he was transferred into the Upstate Correctional Facility ("Upstate").

_____Plaintiff's claims center upon an incident that occurred on November 21, 2002, while he was lined up together with other inmates in the D-Block Corridor at Clinton, awaiting breakfast.  Complaint (Dkt. No. 1) ¶ 12. While standing in line, plaintiff was approached by defendant Hardin, a corrections officer, who began shouting obscenities, accusing him of not properly lining up with the rest of the inmates.  *Id.* ¶ 13.  Defendant Hardin then grabbed plaintiff by the arm and uttered an obscenity, informing plaintiff that he was being "keeplocked for being a [f _ _ _ ing a _ _ hole]", and ordered him to return to his cell.  *Id*.  In compliance with this order, plaintiff began walking toward his cell as defendant Hardin followed behind and barraged him with insults, calling him, *inter alia*, a "[f _ _ _ ing a _ _ hole]", and "dumb ass."  *Id.* ¶ 14.  Despite plaintiff's protestations and requests that defendant Hardin stop insulting him, the verbal harassment continued, and defendant Hardin gave instructions to defendant Conners, a fellow corrections officer, to "keeplock this

4

dumbass." *Id*. ¶ 17.

As the incident escalated, defendant Conners took hold of the plaintiff from behind and pushed him against a steel gate.  Complaint (Dkt. No. 1) ¶ 18.  After the plaintiff grabbed Conners' shoulders in an attempt to regain his balance, Connors shoved the plaintiff into the metal gate a second time.  *Id*. ¶ 19.  At that point, defendant Hardin began beating plaintiff's legs with a baton, threatening, "I'll break his [f _ _ _ ing] legs". *Id*.  Plaintiff was then pushed to the floor, and commanded to turn on his stomach and hold his arms out to the side.  *Id*. ¶ 20.  Despite his compliance with this order, plaintiff was further assaulted by defendants Hardin, Conners, and Giambruno, who allegedly stomped on and beat plaintiff's left arm and hand with batons.  *Id*. ¶¶ 20, 35.  Defendant Conners then grabbed plaintiff's left hand in a vice grip, squeezing harder after plaintiff cried out in pain.  *Id*.

After the altercation subsided, plaintiff was escorted by defendant Giambruno to the facility medical unit, where in the presence of defendant Snow, a corrections sergeant, he was examined by defendant Lynne Khan, a prison nurse, who noted that his hand was swollen, but ended the examination without providing treatment for Johnson's swollen hand or leg

injuries.[2]   Complaint (Dkt. No. 1) ¶¶ 23, 24, 39.  Plaintiff was then taken to

the facility's special housing unit ("SHU") where, he alleges, over the next

eighteen days his continuous complaints of extensive pain and swelling in

his hand were ignored by defendant Sheryl Miller, another nurse

employed by the DOCS.  *Id*. ¶ 25.  Refusing to examine his hand or

schedule an x-ray, defendant Miller instead merely supplied plaintiff with a

prescription for Ibuprofen and explained, "when you assault officers you

have to expect a little pain and [swelling]".  *Id*. ¶ 25.

On December 16, 2002, plaintiff was transferred into Upstate.

Complaint (Dkt. No. 1) ¶ 26.  There, x-rays of Johnson's left hand were

taken on December 23, 2002, based upon his continued complaints

regarding swelling in his hand, revealing that he had suffered chipped

bone fractures.[3]  Complaint (Dkt. No. 1) ¶ 43.  Plaintiff asserts that in light

of the lack of prompt and proper medical attention the bones in his hand

did not heal properly, and as a result he has suffered decreased

movement in his hand.  Complaint (Dkt. No. 1) ¶ 43.  Plaintiff also asserts

---

[2]     Plaintiff also alleges that defendant Khan mocked his injuries and
outcries of pain. Complaint (Dkt. No. 1) ¶ 39.

[3]     A sick call response from Upstate signed by Dr. Richards and attached
as an exhibit to plaintiff's complaint confirms that the x-ray revealed small chip
fractures.  Complaint (Dkt. No. 1) Attachment.

that he has suffered other effects as a result of this incident and the

subsequent denial of adequate medical care, including bruises,

headaches, dizziness, and extreme emotional distress.  *Id*. ¶ 37.

Plaintiff filed a grievance concerning the alleged assault on

December 10, 2002, several days prior to his transfer to Upstate.

Plaintiff's Motion Opposition (Dkt. No. 28) Exh. B.  Although this is not

entirely clear from the record, it appears that this grievance, which was

assigned grievance no. 47487-02, was expedited to the office of the

facility superintendent in light of its nature, containing allegations of staff

misconduct, and where it was ultimately denied.[4]  A printout supplied by

---

[4]      Under the controlling portion of the DOCS regulations, governing inmate
grievances, complaints involving staff misconduct follow an expedited procedure:

(b) Procedure.

      (1) An inmate who wishes to file a grievance complaint that alleges
      employee harassment shall follow the procedures set forth in section
      701.7(a)(1) of this Part.
      Note: An inmate who feels that s(he) has been the victim of employee
      misconduct or harassment should report such occurrences to the
      immediate supervisor of that employee. However, this is not a prerequisite
      for filing a grievance with the IGP.

      (2) All grievances alleging employee misconduct shall be given a
      grievance calendar number and recorded in sequence. All documents
      submitted with the allegation must be forwarded to the superintendent by
      close of business that day.

      (3) The superintendent or his designee shall promptly determine whether

the Central Office Review Committee ("CORC") reflects that plaintiff's

appeal of that unfavorable determination was denied by the CORC on

April 9, 2003.  *See* Eagan Aff. (Dkt. No. 27) Exh. A.

Neither the Inmate Grievance Resolution Committee ("IRGC") at

Clinton nor the CORC have a record of having received a grievance or

---

the grievance, if true, would represent a bona fide case of harassment as
defined in subdivision (a) of this section. If not, then it shall be returned to
the IGRC for normal processing.

(4) If it is determined that the grievance is a bona fide harassment issue, the
superintendent shall either:
(i) initiate an in-house investigation by higher ranking supervisory personnel into
the allegations contained in the grievance; or
(ii) request an investigation by the inspector general's office or, if the
superintendent determines that criminal activity is involved, by the New York
State Police Bureau of Criminal Investigation.

(5) Within 12 working days of receipt of the grievance, the superintendent
will render a decision on the grievance and transmit said decision, with
reasons stated to the grievant, the IGP clerk, and any direct party of
interest. Time limit extensions may be requested, but such extensions
may be granted only with the consent of the grievant.

(6) If the superintendent fails to respond within the required time limit, the
grievant may appeal his grievance to the CORC. This is done by filing a
notice of decision to appeal with the IGP clerk.

(7) If the grievant wishes to appeal the superintendent's response to the
CORC, he must file a notice of decision to appeal with the inmate IGP
clerk within four working days of receipt of that response.

(8) Unless otherwise stipulated in this section, all procedures, rights, and
duties required in the processing of any other grievance as set forth in
section 701.7 of this Part shall be followed.

7 N.Y.C.R.R. § 701.11(b).

8

any appeal from the plaintiff regarding the alleged denial of medical treatment at Clinton following the November 21, 2002 incident. Brousseau Aff. (Dkt. No. 27) ¶ 13; Eagen Aff. (Dkt. No. 27) ¶ 7.  Plaintiff alleges, however, that he submitted a grievance raising that issue on December 5, 2002, specifically complaining of the failure of defendants Khan and Miller to provide suitable treatment for his injuries, but that prison officials failed to respond or assign a number to that grievance. Plaintiff's Motion Opposition (Dkt. No. 28) Exh. B.  Plaintiff appears to allege that unnamed prison officials tampered with his mail, claiming that he was "subjected to several salacious acts concerning his mail and correspondence," and that the grievance he filed was "mysteriously lost" by defendants' co-workers.[5]  Plaintiff's Motion Opposition (Dkt. No. 28) ¶ 2.  After inquiring into its status for several weeks, to no avail, plaintiff wrote a letter to the Central New York Psychiatric Center ("Center") regarding the misplaced grievance.  Plaintiff's Motion Opposition (Dkt. No. 28) ¶ 4.

On January 9, 2002, plaintiff received a response from the Center's

---

[5]        In his opposition papers plaintiff also asserts that upon his transfer on December 11, 2002 into the facility's SHU, where he remained until his transfer into Upstate, he was denied the opportunity to send or receive correspondence.  Plaintiff's Motion Opposition (Dkt. No. 28) ¶ 3.

Director of Risk Management, advising him to address his grievances with the Clinton grievance office or the superintendent.  Plaintiff's Motion Opposition (Dkt. No. 28) Exh. A.  Responding to this correspondence, plaintiff attempted to appeal the inadequate medical care grievance and several other grievances by writing a letter to the CORC on January 13, 2003.  Plaintiff's Motion Opposition (Dkt. No. 28) Exh. B.  In that letter, plaintiff alleges that prison officials never responded to or assigned a number to those grievances and that he was subjected to further harassment and mistreatment at the hands of corrections officers in retaliation for filing grievances.  *Id*.

On February 25, 2003, Thomas Eagen, Director of the Inmate Grievance Program ("IGP"), responded to plaintiff's letter, informing him that the IRGC never received a grievance from him regarding his complaints of inadequate medical care and harassment.  *Id*.  Director Eagen also informed plaintiff that inmates are not permitted to refer grievances directly to CORC, and advised him to submit his grievances to IRGC at his current facility.  *Id*.  Responding to Eagen's correspondence, plaintiff filed a second grievance, dated March 24, 2003, concerning his claims of inadequate medical care.  Plaintiff's Motion Opposition (Dkt. No.

28) Exh. C.  Plaintiff allegedly appealed the failure to act upon that

grievance, but asserts that the appeal was never answered or returned.

Plaintiff's Motion Opposition (Dkt. No. 28) ¶ 6.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on June 3, 2004.  Dkt. No. 1.

Named as defendants in plaintiff's complaint are Jeff Tedford, Deputy

Superintendent of Security at Clinton; Corrections Sergeant Snow; W.B.

Conners, David P. Hardin, and Michael A. Giambruno, all of whom are

alleged to be corrections officers at Clinton; Lynne Khan, a registered

nurse; and Sheryl Miller, a nurse practitioner.  Dkt. No. 1.  Issue was later

joined by the filing of an answer on behalf of defendants on September

30, 2004, in which they have generally denied plaintiff's allegations and

asserted several defenses including, *inter alia*, his failure to exhaust

available administrative remedies before commencing suit.  Dkt. No. 17.

On February 17, 2006, following the close of discovery, defendants

filed a motion for summary judgment dismissing certain of plaintiff's

claims.  In their motion defendants Tedford, Snow and Giambruno seek

dismissal of plaintiff's claims against them based on the lack of their

personal involvement in the constitutional violations alleged in plaintiff's

complaint.  Defendants Khan and Miller additionally request dismissal of

plaintiff's medical indifference claim against them based upon his failure to

file an internal grievance regarding that failure before commencing this

action.  Dkt. No. 27.  Plaintiff has since filed a response in opposition to

defendants' motion for summary judgment, arguing that his efforts to

grieve the denial of medical treatment were thwarted by prison officials,

but candidly acknowledging that he has no evidence of involvement on the

part of defendants Tedford, Giambruno and Snow in the relevant events

giving rise to his claims.  Dkt. No. 28.

 Defendants' motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III. <u>DISCUSSION</u>

 A. <u>Summary Judgment Standard</u>

Summary judgment is warranted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits . . . show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.

Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party has the initial

burden of demonstrating that there is no genuine issue of material fact to

be decided with respect to any essential element of the nonmoving party's

claim.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4.  Once that

burden is met, the opposing party must show, through affidavits or

otherwise, that there is a material factual issue for trial.[6]  Fed. R. Civ. P.

56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at

250, 106 S. Ct. at 2511.  When deciding a summary judgment motion, the

court must resolve any ambiguities and draw all inferences from the facts

in a light most favorable to the nonmoving party.  *Wright v. Coughlin*, 132

F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate

where "review of the record reveals sufficient evidence for a rational trier

of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313

---

[6]      A material fact is genuinely in dispute "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at
248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when
defending against summary judgment motions, they must establish more than merely
"metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *Vital v. Interfaith Med.
Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider
whether *pro se* plaintiff understood nature of summary judgment process).

F.3d 713, 719 (2d Cir. 2002) (citation omitted).

### B.   Failure To Exhaust Administrative Remedies

Defendants Khan and Miller base their summary judgment motion entirely on plaintiff's alleged failure to properly exhaust administrative remedies concerning his claims of inadequate medical care and treatment, contending that this failure warrants dismissal of those claims.  In opposition to defendants' summary judgment motion, plaintiff seemingly seeks to invoke those cases which under certain, narrow circumstances permit exemption from application of the PLRA's exhaustion requirement as a bar to pursuit of a section 1983 claim.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), altered the inmate litigation landscape considerably, imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  One such restriction introduced by the PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that the "PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).

In this instance, defendants convincingly argue that there is no record of the filing and pursuit by plaintiff of a grievance regarding the alleged denial of adequate medical treatment.  Eagen Aff. (Dkt. No. 27) ¶ 2; Brousseau Aff. (Dkt. No. 27) ¶¶ 10, 13.  Although plaintiff did attempt to present that claim directly to the CORC, it was rejected based upon his failure to first properly present the matter to the IGRC at Clinton.  Plaintiff's Motion Opposition (Dkt. No. 28) Exh. B.  Ordinarily, such circumstances would justify a dismissal for failure to satisfy the PLRA's exhaustion requirement.

In a series of cases decided in August of 2004, however, the Second Circuit recognized that under certain, limited circumstances an inmate may be relieved of his or her exhaustion requirement under the PLRA.  *See Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004); *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); and *Ortiz v.*

15

*McBride*, 380 F.3d 649 (2d Cir. 2004), *cert. denied*, 543 U.S. 1187, 125 S.

Ct. 1398 (2005).  Read together these consolidated cases, as they are

referred to by the Second Circuit, set out a three-part inquiry to be

employed in cases where an inmate plaintiff seeks to counter the

defendants' contention that the prisoner has failed to exhaust

administrative remedies as required under 42 U.S.C. § 1997(e).[7]  *Hemphill*,

380 F.3d at 686.  Initially, the court must examine whether administrative

remedies were in fact "available" to the prisoner.  *Hemphill*, 380 F.3d at

686 (citing *Abney*).  Upon ascertaining the existence of available remedies,

the court should next inquire as to whether the defendants may have

forfeited the affirmative defense of non-exhaustion by failing to raise or

preserve it, or whether through their own actions inhibiting or deterring the

inmate's exhaustion of remedies one or more of the defendants should

_____

[7]       One of these cases, *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004), did
not directly address the three-pronged analysis suggested by the Second Circuit in
*Hemphill*.  Instead, *Ortiz* principally considered the issue of "total exhaustion" – that is,
whether a complaint containing both exhausted and unexhausted claims should be
dismissed in its entirety – a question which has spawned conflicting judicial viewpoints.
*Id.* at 655-56.  The *Ortiz* court rejected a total exhaustion requirement as contrary to
the policies underlying the PLRA, and held that when confronted with a "mixed"
complaint containing both exhausted and unexhausted claims, a court should dismiss
the unexhausted claims and allow the exhausted claims to proceed.  *Id.* at 645.  That
issue is currently before the Supreme Court, to be considered in its impending
October, 2006 term.  *Williams v. Overton*, 136 Fed. Appx. 859 (6th Cir. 2005)
(unpublished), *cert. granted*, 05-7142, 126 S. Ct. 1463 (2006), *scheduled for argument*
Oct. 30, 2006.

justly be estopped from raising the plaintiff's failure to exhaust as a defense. *Hemphill*, 380 F.3d at 686 (citing *Johnson* and *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)). Lastly, the court should consider whether the plaintiff has plausibly alleged the existence of "special circumstances" which justify the prisoner's failure to comply with administrative procedural requirements. *Hemphill*, 380 F.3d at 686 (citing, *inter alia*, *Giano*).

A careful review of plaintiff's complaint discloses no references to any grievance addressing plaintiff's medical treatment, the relevant sections of the complaint instead referring only to the filing of a grievance against corrections officers, ostensibly including defendants Hardin and Conners. Complaint (Dkt. No. 1) ¶ 10. In his motion opposition papers, however, plaintiff asserts that he did in fact submit a grievance raising that issue on December 5, 2002 but that prison officials never responded to or assigned a number to that grievance. Plaintiff's Motion Opposition (Dkt. No. 28) ¶ 1 & Exh. B.

A threshold inquiry under applicable Second Circuit authority is whether administrative remedies exist and are available to the plaintiff to address the condition at issue. *See Abney v. McGinnis*, 380 F.3d 663, 667

(2d Cir. 2004).  Whether such a remedy is "available" is a fact-specific inquiry, informed by a careful analysis of both the grievance regime applicable to the complaint and the facts surrounding plaintiff's efforts to resort to the presumed process.  *Id.*; *see also Dukes v. S.H.U. C.O. John Doe #1*, No. 03 CIV. 4639, 2006 WL 1628487, at *3 (S.D.N.Y. June 12, 2006).

New York prison inmates are subject to an Inmate Grievance Program established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The New York Inmate Grievance Program consists of a three-step review process.  First, a written grievance is submitted to the IGRC within fourteen days of the incident.[8]  7 N.Y.C.R.R. § 701.7(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  7 N.Y.C.R.R. § 701.7(a).  If an appeal is filed, the superintendent of the facility next reviews the

---

[8]     The Inmate Grievance Program supervisor may waive the timeliness of the grievance submission due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.7(a)(1).

IGRC's determination and issues a decision. *Id.* § 701.7(b). The third

level of the process affords the inmate the right to appeal the

superintendent's ruling to the CORC, which makes the final administrative

decision. *Id.* § 701.7(c). Only upon exhaustion of these three levels of

review may a prisoner seek relief pursuant to section 1983 in a federal

court. *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing,

*inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3

(S.D.N.Y. Dec. 11, 2000)).

Under this governing regulatory scheme, if an inmate who has filed a

grievance does not receive a response from the IGRC within a prescribed

period of time and the IGRC fails to seek an extension of that time period

from the grievant, the inmate may appeal to the next level without awaiting

administrative action. Courts in the Second Circuit have held that a

plaintiff's failure to pursue the matter through the appropriate mechanism,

despite not having received a grievance response, could be deemed as

fatal to his or her claims under the PLRA. *Waters v. Schneider*, No. 01

Civ. 5217, 2002 U.S. Dist. LEXIS 7166 (S.D.N.Y. Apr. 17, 2002). This

case is distinguishable from that line of authority, however, as plaintiff

avers that in addition to never having received a response to his grievance,

he also was never assigned a grievance number.  Moreover, plaintiff's
papers reflect that while he did attempt to pursue the unanswered
grievance to the CORC, that effort was rebuffed due to the lack of any
record of the grievance having been filed at the facility level.  Plaintiff's
Motion Opposition (Dkt. No. 28) Exh. B.

These allegations are sufficient to raise a question of fact as to
whether administrative remedies were in fact available to the plaintiff.  *See
Dukes*, 2006 WL 1628487, at *5 ("[I]f officials did, in fact, fail to assign
grievance numbers to [plaintiff's] grievances, any further remedies . . . may
have been unavailable because, without a grievance number, there would
be no grievance to review on an appeal").  I am therefore unable to say as
a matter of law that plaintiff failed to exhaust the administrative remedies
which were available to him before commencing suit based upon his
deliberate medical indifference claim.

C.    Personal Involvement

In their motion, defendants Tedford, Giambruno, and Snow also seek
dismissal of plaintiff's claims against them, arguing that Johnson has failed
to sufficiently allege their personal involvement in the constitutional
violations alleged.  In response to this portion of defendants' motion,

20

plaintiff in essence has conceded that he lacks evidence connecting them to the violations alleged.

Personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

### 1.    Defendant Tedford

Other than naming defendant Tedford in the caption of his complaint and listing him in the portion which identifies the parties, plaintiff fails to make any specific reference to him which would link him to any alleged unconstitutional conduct.  Complaint (Dkt. No. 1) ¶¶ 27-31.  Accordingly, I recommend that defendant Tedford's motion for summary judgment be granted and plaintiff's complaint against him dismissed on the basis of lack of personal involvement.  *Hucks v. Artuz*, No. 99 Civ. 10420, 2001 WL

210238, at *5 (S.D.N.Y. Feb. 27, 2001) (no personal involvement when defendant named in caption but not described in body of complaint); *Dove v. Fordham Univ.*, 56 F. Supp.2d 330, 335 (S.D.N.Y. 1999) (same); *Brown v. Costello*, 905 F. Supp. 65, 77 (N.D.N.Y. 1995) (same).

> 2.   Defendant Snow

Plaintiff's complaint also fails to sufficiently allege defendant Snow's involvement in the constitutional violations alleged.  Defendants assert that plaintiff's claims against defendant Snow appear to be premised entirely upon his position as a supervising sergeant.

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor, however, inasmuch as there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing

the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring.  *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

It is true that plaintiff's complaint contains limited references to defendant Snow.  In admittedly conclusory fashion, plaintiff alleges that defendant Snow failed to intercede in the incident of November 21, 2002 and to protect him and ensure that he received proper treatment for his injuries.  Complaint (Dkt. No. 1) ¶ 36.  While this excerpt is ambiguous as to whether defendant Snow actually witnessed the alleged use of excessive force, and was thus in a position to prevent or end the violation, plaintiff's complaint squarely places defendant Snow as a witness to the ensuing medical examination by defendant Khan, and thus in a position to remedy the nurse's indifference to his medical needs.  *Id.* ¶¶ 23, 36, 39. Drawing all inferences and resolving all ambiguities in plaintiff's favor, I therefore recommend against dismissal of plaintiff's claims against defendant Snow based upon lack of personal involvement.  *See Wright*, 132 F.3d at 137.

       3.    <u>Defendant Giambruno</u>

23

Despite plaintiff's acknowledgment that he lacks "tangible evidence" regarding defendant Giambruno's involvement in the relevant conduct giving rise to his claims, defendants' motion overlooks a portion of plaintiff's complaint which describes defendant Giambruno's role in the alleged assault and the injuries inflicted upon plaintiff.[9]  There, plaintiff groups Giambruno with defendants Conners and Hardin and alleges that all three repeatedly struck him with their batons and kicked him while he was lying flat on his stomach.  Complaint (Dkt. No. 1) ¶ 35.  This allegation suffices to allege defendant Giambruno's personal involvement at this early procedural stage.

IV.    SUMMARY AND RECOMMENDATION

The record before the court reveals that plaintiff has failed to exhaust his administrative remedies concerning his claims of inadequate medical treatment.  This notwithstanding, because prison officials' alleged failure to process a grievance setting forth those claims may have precluded the plaintiff from complying with the DOCS grievance mechanism, I

---

[9]    Under 28 U.S.C. § 1746 a complaint which is filed "under penalty of perjury" can be considered as the equivalent of an affidavit.  While plaintiff's complaint does not contain this language, but instead is simply signed by the plaintiff as "[r]espectfully [s]ubmitted", I have considered plaintiff's complaint as the functional equivalent of an affidavit, for purposes of the instant motion.

recommend that the motion for summary judgment filed by defendants Khan and Miller be denied.  I also recommend denial of defendants Giambruno's and Snow's motion for summary judgment, based upon allegations within plaintiff's complaint suggesting their personal involvement in the relevant events forming a basis for his constitutional claims.  Because plaintiff has failed to offer any proof connecting defendant Tedford to the unconstitutional conduct alleged in his complaint, however, I recommend that his motion for summary judgment be granted, and he be dismissed as a defendant in this action.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 27) be GRANTED, in part, and that all claims against defendant Tedford be DISMISSED, but that it otherwise be DENIED, including with respect to plaintiff's claims against defendants Giambruno, Snow, Khan, and Miller.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*,

984 F.2d 85 (2d Cir. 1993).

Dated:     September 19, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\prisoner\Johnsonemanuelreprec.wpd

26