**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**EMMANUEL T. JOHNSON,**

            **Plaintiff,**    04-CV-632
    (GLS/DEP)
       **v.**

**JEFF TEDFORD,** *Deputy Superintendent*; **SGT. SNOW**; **W.B. CONNERS,** *Corrections Officer*; **DAVID P. HARDIN,** *Corrections Officer*; **MICHAEL GIAMBRUNO,** *Corrections Officer*; **LYNNE KHAN,** *Registered Nurse*; *and* **SHERYL MILLER,** *Nurse Practitioner*,

            **Defendants.**
_____

**APPEARANCES:**    **OF COUNSEL:**

**FOR THE PLAINTIFF:**

EMMANUEL T. JOHNSON
Plaintiff, *Pro Se*
98-B-1104
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902

**FOR THE DEFENDANT:**

HON. ANDREW M. CUOMO    DAVID FRUCHTER

New York State                                            Assistant Attorney General
Attorney General
The Capitol
Albany, New York 12224-0341

**Gary L. Sharpe**
**U.S. District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff *pro se* ("Johnson") brings this action pursuant to 42 U.S.C. § 1983. He alleges that the defendants violated his constitutional rights under the First, Fifth, Eighth and Fourteenth Amendments by verbally and physically assaulting him, and subsequently denying him adequate medical care for injuries he sustained in that assault. *See Compl.* ¶ 1, *Dkt. No. 1*. The State, on behalf of defendants Tedford, Snow, Giambruno, Khan, and Miller, filed a motion for partial summary judgment which was referred to Magistrate Judge David E. Peebles for report and recommendation.[1] *See Dkt. No. 35*; *see also* 28 U.S.C. § 636(b)(1)(A), (B); N.D.N.Y. R. 723(c); Gen. Order No. 12, § D(1)(G). Judge Peebles recommended that the motion be granted in part and denied in part.

---

[1] The Clerk is directed to append Judge Peebles' Report-Recommendation to this decision, and familiarity is presumed.

2

Both parties have now filed timely objections. *See Dkt. Nos. 35, 39.*[2] Specific objections will be reviewed under a *de novo* standard, while the remainder of the objections are general and will be reviewed under a clearly erroneous standard. *See Almonte v. N.Y. State Div. of Parole*, No. 9:04-CV-484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006). Upon careful consideration of the arguments, the relevant parts of the record, and the applicable law, the court adopts the Report-Recommendation in part and rejects it in part.

## II. **Standard of Review**

A party's objection to the findings and recommendations of the Magistrate Judge must be filed within 10 days of receiving the Magistrate's recommendation and order. *See id.* at *2-6. Objections must be written and specific, which is to say they must "specify the findings and recommendations to which [the party] object[s], and the basis for their objections." *Id.*

Those recommendations and findings as to which the party has made timely, specific objection must be reviewed *de novo*. *Id.* However, those

---

[2]The court notes that while Johnson has filed objections, he does not actually object to any of Judge Peebles' factual or legal conclusions. Instead, Johnson's motion responds to the defendants' objections, and he generally reiterates his original arguments. *See Dkt. No. 39.*

3

as to which the party has not made timely and/or specific objection are not entitled to any review, although the court may, in its discretion, elect to conduct a review nonetheless. *Id.* While the court may conduct a discretionary review pursuant to any standard it sees fit, this court has consistently applied a "clearly erroneous" standard. *Id.* Under this standard a recommendation or finding will be overturned only if "the court determines that there is a mistake of fact or law which is obvious and affects substantial rights." *Id.*

Objections based on arguments not raised as a matter of first impression before the Magistrate Judge are also not entitled to any review. *See id.* In such a situation the court may again elect to conduct a discretionary review, this time using a *de novo* standard as a matter of necessity, since the Magistrate has not had an opportunity to pass on the argument. *See id.*

### III. <u>Discussion</u>

Preliminarily, the court particularizes the claims Johnson asserts. Under 42 U.S.C. § 1983, Johnson initially sets forth causes of actions for excessive use of force, assault and battery, negligence, denial of medical care, and confinement in segregation in violation of the First, Fifth, Eighth

and Fourteenth Amendments to the U.S. Constitution. *See Compl. ¶ 1, Dkt. No. 1.* However, the only cognizable causes of action the court can discern under § 1983 are for excessive use of force and denial of medical care in violation of the Eighth Amendment. Accordingly, to the extent the complaint may be read as asserting other claims, they are dismissed.

**A.     Procedural Objections**

The State initially objects to Judge Peebles' excusal of Johnson's failure to file affidavits or comply with N.D.N.Y. R. 7.1(a)(3)[3], and the Judge's reliance on the unsworn complaint as the equivalent of an affidavit. *See Aff. re R&R ¶¶ 6-7, Dkt. No. 35.*

While it is true that Johnson has not filed any affidavits in response to the motion for summary judgment, he has filed assorted other exhibits. *See Resp., Dkt. No. 28.* In addition, he has provided a 7.1(a)(3) statement which roughly responds to the defendants' statement of material facts. *Id.* While these filings are far from ideal, courts must afford *pro se* litigants special latitude in order to ensure they are not denied access to the courts because of procedural technicalities. *See Singleton v. Caron*, No. 9:03-

---

[3] Local Rule 7.1(a)(3) states, in relevant part, that on a motion for summary judgment "[t]he opposing party shall file a response to the Statement of Material Facts.... Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." N.D.N.Y. R. 7.1(a)(3).

CV-00455, 2006 WL 2023000, at *3 n.5 (N.D.N.Y. July 18, 2006).  Here, Judge Peebles relied on the factual assertions made in Johnson's complaint and counter-statement of material facts.  *See Dkt. Nos. 1, 28.*  Accordingly, Judge Peebles acted within his discretion in considering the facts in dispute.

**B.     Failure to Exhaust Administrative Remedies**

The State next takes issue with Judge Peebles' recommendation that the claims against Nurse Kahn and Nurse Practitioner Miller survive.  *See R&R pgs. 14-20, Dkt. No. 31.*  It is asserted that Johnson never filed a prisoner grievance regarding inadequate medical care, and therefore his denial of medical care claims against Kahn and Miller must be dismissed for failure to exhaust administrative remedies under The Prison Litigation Reform Act of 1996 ("PLRA").  See 42 U.S.C. § 1997e(a); *Summ. J. Mem. pgs. 6-7, Dkt. No. 27.*  Johnson contends that he did file such a grievance and prison officials failed to respond or assign a grievance number to it.  *See Resp., Dkt. No. 28.*

The PLRA prohibits a prisoner from bringing a § 1983 action for claims related to his incarceration unless "such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*,

6

534 U.S. 516, 532 (2002). Given this requirement, an initial battle between the government and prisoners in § 1983 actions often centers on whether the prisoner has in fact exhausted administrative remedies. The Second Circuit, in a series of cases decided in 2004, set out a three part test to assist courts in resolving such disputes. *See, e.g., Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004). The first step is to determine "whether administrative remedies were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citing *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004)). Next, the court must "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it," *Id.* (citing *Johnson*, 380 F.3d at 695), or "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citing *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)). Finally, "special circumstances" may justify the prisoners failure to exhaust administrative remedies. *Id.* (citing *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004)).

In addressing the availability of administrative remedies under the

7

first step, the court notes that at all times relevant to this action DOCS had a three tiered prisoner grievance procedure. Initially, the prisoner was required to submit a written grievance within 14 days of the incident to the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. § 701.7(a) (2003). The next level of appeal was to the superintendent of the facility. *Id.* § 701.7(b) (2003). Finally, a prisoner could appeal the superintendent's decision to the Central Office Review Committee which has the final say at the administrative level. *Id.* § 701.7(c) (2003).

There is no dispute that Johnson's denial of medical care grievance did not flow through these administrative channels, which would normally result in a dismissal of his § 1983 claim. In addition, the fact that a grievance draws no response has been held insufficient to show exhaustion of remedies by most courts to address the issue, as the grievance could bypass the non-responsive administrative level after a set period, so long as it was properly recorded and assigned a number. See *id.* § 701.8 (2003); *Wesley v. Hardy*, No. 05 Civ. 6492, 2006 WL 3898199, at *4 (S.D.N.Y. Dec. 12, 2006); *Williams v. City of New York*, No. 03 Civ. 5342, 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005). However, in light of the Second Circuit's *Hemphill* decision, several Southern District cases

8

have recognized that when a prisoner asserts a grievance to which there is no response, *and it is not recorded or assigned a grievance number,* administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review.  See *Hemphill*, 380 F.3d at 687 n.6; *Randolph v. City of New York Dept. of Correction*, No. 05 Civ. 8820, 2007 WL 2660282, at *9 n.10 (S.D.N.Y. 2007); *Dukes v. S.H.U. C.O. John Doe #1*, No. 03 CIV 4639, 2006 WL 1628487, at *2-5 (S.D.N.Y. June 12, 2006).

Johnson's allegations set out exactly such a scenario, as he claims his denial of medical care grievance did not receive a response or grievance number.  *See Resp., Dkt. No. 28.*  While the court would normally be hesitant to afford weight to such assertions, there is some evidence to support them in the form of inquiry letters and official responses regarding the grievance at issue.  *See id.* Thus, viewing the evidence in a light most favorable to Johnson, the court must take as established for summary judgment purposes that he filed a grievance which was not responded to, recorded or assigned a grievance number.  It is in this context that the State bears the burden of showing that Johnson has not exhausted his administrative remedies.  *See Harrison v. Stallone*,

9

No. 9:06-CV-902, 2007 WL 2789473, at *3 (N.D.N.Y. Sept. 24, 2007). However, on the record before it the court cannot discern whether a prisoner in Johnson's position had administrative remedies available under the procedure established by DOCS at the time of the alleged grievance. Accordingly, the court must agree with Judge Peebles that Johnson's denial of medical care claims against Kahn and Miller cannot be dismissed at this juncture for failure to exhaust administrative remedies.

C. **Eighth Amendment Claims**

§ 1983 prohibits any person, under color of law, from depriving another "of any rights, privileges, or immunities secured by the Constitution and laws." 42. U.S.C. § 1983. A § 1983 claim alleging violation of Eighth Amendment rights always requires proof of two elements: "(1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" *Trammel v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Throughout the years, various permutations of the required showing have evolved through caselaw. As relevant here, a prisoner must prove

deliberate indifference to a serious medical need to establish a claim for denial of medical care. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Establishing deliberate indifference requires a showing of more than simple negligence. *Farmer*, 511 U.S. at 835. Rather, a defendant must exhibit disregard of a known and excessive risk to the prisoner's health or safety. *Id.* Whether a medical need is serious is a fact specific inquiry, and courts should consider "whether 'a reasonable doctor or patient would find [the condition] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Under a theory of excessive force a more culpable state of mind is required to establish an Eighth Amendment violation. A prisoner "must show that force was used 'maliciously and sadistically for the very purpose of causing harm' in order to demonstrate the requisite scienter." *Trammel*, 338 F.3d at 162 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). If, however, "the force was used in a good-faith effort to maintain or restore discipline" the Eighth Amendment has not been violated. *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### 1. **<u>Defendant Tedford</u>**

Johnson has not objected to the recommendation of Magistrate Judge Peebles that all claims against defendant Tedford be dismissed. *See R&R pgs. 21-22, Dkt. No. 31.* As this recommendation is free from clear error, the court adopts it in its entirety and dismisses all claims against defendant Tedford.

### 2. **<u>Defendant Giambruno</u>**

As to the excessive force claim, the only allegations against Giambruno is that after the assault was over and Johnson was being held against a wall "he was allowed to look up [and] he saw C.O. Giambruno's name tag, and was escorted by him to the hospital," where Johnson was "pushed against a wall" so that Giambruno could take off the handcuffs. *Compl. ¶¶ 21, 23, Dkt. No. 1.* These allegations are insufficient to show that Giambruno used malicious, sadistic force for the purpose of causing harm. If an excessive force claim could be predicated on a name tag and the removal of handcuffs, there is not a corrections officer in the State who would escape an Eighth Amendment suit. As such, the court must disagree with the recommendation of Judge Peebles, and dismiss the excessive force claim against defendant Giambruno.

To the extent the complaint alleges a claim against Giambruno for

denial of medical care, the court notes that there are insufficient facts alleged and no actual evidence of Giambruno's personal involvement in that constitutional violation. As such, the denial of medical care claim against him is dismissed.

### 3. **Defendant Snow**

Snow's liability for excessive force on a theory of actual participation is even more tenuous than Giambruno's. The only mention of Snow in the complaint's recitation of facts is when Johnson saw his name tag during the medical examination after the assault. *See Compl.* ¶ *23, Dkt. No. 1.* Thus, Johnson apparently bases the excessive force claim against Snow on his status as supervising sergeant over the corrections officers at the time of the alleged assault. Supervisor liability under § 1983 can be shown by "(1) actual direct participation in the constitutional violation; (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

Johnson has failed to present even a scintilla of evidence which

would satisfy any of the above in the context of his excessive force claim. The only relevant allegation in his complaint is that Snow "never made any moves verbally or physically to [ensure] plaintiff's safety." *Compl. ¶36, Dkt. No. 1.* However, because Johnson's complaint provides that he didn't see Snow until he was brought to the facility hospital subsequent to the assault, conclusory allegations of Snow's inaction during the assault are insufficient to state a claim. This is especially so given that the uncontested affidavit of Snow states that he was not present at the alleged assault. See *MSJ, Snow Aff. ¶3, Dkt. No. 27.* Accordingly, the court must dismiss the excessive force claim against Snow.

As to the denial of medical care claim, Johnson asserts that defendant Nurse Kahn was deliberately indifferent to his injuries at the medical examination after the assault, and since Snow was present as a supervisor he could have remedied this violation. *See Compl. ¶¶ 36, 39, Dkt. No. 1.* The court seriously doubts that Snow had any supervisory power over the medical staff, despite Johnson's allegations to the contrary. However, the State has provided no actual evidence that Snow lacked such authority,[4] and it is undisputed that he was at the medical examination

---

[4] Snow's supervisory authority over medical staff was not even challenged by the State until objections to Jude Peebles' Report-Recommendation were filed. *Aff. re R&R ¶ 4, Dkt. No. 35.* The objections state "that, as a matter of law, it is unreasonable to place a duty upon

after the assault.  As such, he could be liable for gross negligence in supervising Kahn when she engaged in the examination of Johnson, or for failing to remedy the violation from which the denial of medical care claim arises.

While a finding that Kahn's examination did not violate the Eighth Amendment would also exculpate Snow, the court is unable to address this possibility, since the State has failed to make a substantive argument on the denial of medical care claim, as discussed *infra*.  Accordingly, on the record before it, the court would be inclined to retain the denial of medical care claim as to Snow.  However, because the complaint gave dubious notice that it was asserting such a claim against Snow, the court will allow the State to renew its motion for summary judgment.  The renewed motion shall address only Snow's supervisory capacity over the medical staff named as parties to this action.

### 4. **Defendants Kahn and Miller**

While not raised by the parties, the court notes that the record is completely devoid of evidence which could sustain an excessive force

---

defendant Snow, a corrections sergeant, to evaluate the adequacy of a medical examination by a member of the facility medical staff such as defendant Khan." *Id.*  However, no evidence or caselaw is presented to support this contention.

15

claim against defendants Kahn and Miller.  Accordingly, to the extent the complaint may be read as asserting excessive force claims against them, such claims are dismissed.

The State relied solely on its exhaustion of remedies defense in attempting to exculpate defendants Kahn and Miller from the denial of medical care claims.  *See Summ. J. Mem. pgs. 6-7, Dkt. No. 27.*  The court has already concluded, *supra*, that these defendants are not entitled to summary judgment based on exhaustion.  Since there are allegations in Johnson's complaint which, if true, may subject Kahn and Miller to liability, and no substantive argument has been made on their behalf, the denial of medical care claims against them survive.

### 5.     **Defendants Conners and Hardin**

Defendants Conners and Hardin are not included in the State's motion for summary judgment.  However, the court, in reviewing the complaint, has ascertained that there are no allegations against them which would support a denial of medical care claim.  Accordingly, any such claims asserted against Conners or Hardin are dismissed.

### IV.  **Conclusion**

Having considered the objections and reviewed Judge Peebles' findings of fact and conclusions of law, the court rejects Judge Peebles'

Report-Recommendation insofar as it recommends against dismissal of the claims against defendant Giambruno and the excessive force claim against Snow.  The court adopts Judge Peebles' Report-Recommendation to the extent it is consistent with this decision.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Judge Peebles' September 19, 2006 Report-Recommendation (*Dkt. No. 31*) is accepted and adopted in part, and rejected in part; and it is further

**ORDERED** that all claims asserted in the complaint other than those for excessive force and denial of medical care in violation of the Eighth Amendment are dismissed in their entirety; and it is further

**ORDERED** that all claims against defendants Tedford and Giambruno are dismissed; and it is further

**ORDERED** that all claims against defendants Snow, Kahn and Miller, other than those for denial of medical care, are dismissed; and it is further

**ORDERED** that the State may elect to renew its motion for summary judgment before this court within thirty (30) days from the date of this order, with such motion to address only Snow's supervisory capacity over defendants Kahn and Miller in the context of the denial of medical care

claims; and it is further

**ORDERED** that if the motion is renewed plaintiff shall reply to such motion within thirty (30) days of its filing; and it is further

**ORDERED** that all claims against defendants Conners and Hardin, other than those for excessive force, are dismissed; and it is further

**ORDERED** that the Clerk of Court provide copies of this Order to the parties.

**IT IS SO ORDERED.**

November 16, 2007
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge